UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ONTIVEROS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>S. FRAUENHEIM,<br><br>　　　　Respondent. | Case No. 1:17-cv-01448-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS<br><br>OBJECTIONS DUE IN 14 DAYS<br><br>ECF No. 13 |

Petitioner Edward Ontiveros, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. He claims numerous violations of due process, challenging procedural aspects of his parole hearings. Respondent moves to dismiss the petition for, among other reasons, lack of jurisdiction. ECF No. 13. For the reasons discussed below, we recommend that the court grant respondent's motion to dismiss.

## I.  Background[1]

Petitioner has been convicted of first-degree murder and is serving an indefinite sentence of twenty-five years to life in prison. In June of 2015, petitioner attended a parole hearing ("June 2015 Hearing"). Petitioner argued at the June 2015 Hearing that he had no opportunity to review a psychological report that contained findings unfavorable to his parole ("2015 Report"). The commissioner presiding over the June 2015 Hearing postponed the hearing to December 2015. In December 2015, petitioner attended another hearing ("December 2015 Hearing"). His parole was

---

[1] The following facts are drawn from petitioner's amended petition and its exhibits. *See* ECF No. 6.

1 denied at the December 2015 Hearing for, among other reasons, minimizing his responsibility for shooting Carl Moore, whom petitioner had shot for selling a defective tape player, and untruthfulness. Petitioner had counsel at both the June 2015 Hearing and December 2015 Hearing, even though petitioner decided to proceed pro se toward the end of the June 2015 Hearing.

## II. Discussion

We begin with the threshold issue of jurisdiction. If a prisoner's claim "would necessarily demonstrate the invalidity of confinement or its duration," a habeas petition is the appropriate avenue for the claim. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). In contrast, if a favorable judgment for the petitioner would not "necessarily lead to his immediate or earlier release from confinement," he may assert his claim only under 42 U.S.C. § 1983. *See Nettles v. Grounds*, 830 F.3d 922, 935 (9th Cir. 2016).

Here, petitioner seeks a new parole hearing. His petition's success would—at best—result in a new parole hearing, which would not necessarily lead to his earlier release. *See* ECF No. 6 at 27; *Woods v. Valenzuela*, 734 F. App'x 394, 395-96 (9th Cir. 2017) ("Because the ultimate relief Woods seeks through his petition is a new parole hearing at which parole authorities may, in their discretion, decline to shorten his prison term, a favorable judgment would not necessarily result in earlier release. His claim is thus not cognizable in habeas, and we vacate for lack of habeas jurisdiction the district court's denial on the merits of Woods' habeas claim."). Petitioner therefore has not stated a cognizable habeas claim.

A district court can convert a habeas petition into a civil rights complaint in certain cases. "If the complaint is amenable to conversion on its face, meaning that it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the pro se litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint." *Nettles*, 830 F.3d at 936 (remanding case to district court to consider claim under Section 1983); *see also Woods v. Valenzuela*, 734 F. App'x 394, 396 (9th Cir. 2017) (remanding case after noting that plaintiff could have viable Section 1983 claim under *Swarthout v. Cooke*, 562 U.S. 216 (2011)). Here, petitioner has named the warden of his institution of confinement and no one else as a party, so the petition is not amenable to conversion

on its face. The remaining question is the consequence of allowing petitioner to amend the petition to proceed with a Section 1983 complaint in this case.

The conversion into a Section 1983 complaint would result in a strike under the Prison Litigation Reform Act for failure to state a claim, *see* 28 U.S.C. § 1915(g), because petitioner's Section 1983 claims are barred by *Swarthout v. Cooke*, 562 U.S. 216 (2011). The petition and its exhibits show that the defects in the petition cannot be cured, so directing petitioner to file an amended complaint would waste resources and ultimately work to petitioner's detriment. *See Sossa v. Diaz*, 729 F.3d 1225, 1232 (9th Cir. 2013) (reasoning that pro se litigant should not be misled). The appropriate disposition is therefore dismissal.[2]

Federal law does not require states to offer parole to their prisoners, and even when a state decides to create a liberty interest in parole under its own law, "the only federal right at issue is procedural." *Cooke*, 562 U.S. at 219-20. Put another way, the question here is whether petitioner had adequate process during his parole proceeding, not whether the Commission's decision is correct. *See id.* at 222. A federal court's review of state parole decisions "is limited," and a federal court must recognize that "state actors have wide latitude in their decisionmaking" in parole proceedings. *See Gilman v. Brown*, 814 F.3d 1007, 1020 n. 16 (9th Cir. 2016).

In *Cooke*, the Supreme Court explained that the procedures required in the parole context are "minimal." *See* 562 U.S. at 220. Parole procedures suffice "as long as the state provides an inmate seeking parole with an opportunity to be heard and . . . a statement of the reasons why parole was denied." *Styre v. Adams*, 645 F.3d 1106, 1108 (9th Cir. 2011); *see also Roberts v. Hartley*, 640 F.3d 1042, 1046 (9th Cir. 2011). The Constitution "does not require more," and that is "the beginning and the end of the federal habeas courts' inquiry." *Cooke*, 562 U.S. at 220.

Here, the petition, its exhibits, and documents subject to judicial notice show that petitioner had the opportunity to be heard and was provided with the reasons why his parole was denied.

---

[2] Because the petition does not state a cognizable habeas claim that would necessarily lead to petitioner's earlier release, the dismissal would be for lack of jurisdiction, *see Nettles*, 830 F.3d at 924, and such a dismissal does not preclude petitioner from asserting a meritorious claim for habeas relief or a claim under Section 1983.

3

Petitioner had an opportunity to present his evidence at both the June 2015 Hearing and the December 2015 Hearing. *See* ECF No. 6 at 99-106, 109-200; ECF No. 6-1 at 1-57. He was provided with reasons for being denied parole. *See* ECF No. 6-1 at 42-57. These procedures satisfy the "minimal" threshold of *Cooke*.

Petitioner raises seven claims that challenge the procedural aspects of his parole hearings: (1) petitioner was deprived of his right to have confidential communications with his attorney; (2) petitioner did not receive the 2015 Report before the June 2015 Hearing; (3) petitioner had only a limited opportunity to rebut the 2015 Report; (4) petitioner was denied an "Olsen review";[3] (5) petitioner was denied accommodations despite his learning disability; and (6) denial of petitioner's parole was motivated by bias. Petitioner cannot succeed on any of these claims.

### a. Confidential communication with counsel

Petitioner contends that he was deprived of his right to have confidential communications with his attorney. *See* ECF No. 6 at 9 (citing ECF No. 6 at 100-03). Petitioner argues that he could not pass documents to his attorney because of a glass window and could not speak to his attorney in confidence because a correctional officer stood behind the attorney. *See id*. at 101, 103. The presiding commissioner at the June 2015 Hearing allowed petitioner to pass documents to his attorney, and the hearing was postponed to December 2015, so by the December 2015 Hearing, petitioner had the opportunity to pass documents to his attorney. *See id*. at 94, 100-04. In addition, the presiding commissioner at the June 2015 Hearing explained to petitioner that a confidential conversation between petitioner and his attorney could be arranged:

> **PRESIDING COMMISSIONER TURNER**: And if there's in particular about any of the documents . . . that you want to put on the record, we'll be able to do that today. . . .
>
> **PRESIDING COMMISSIONER TURNER**: Did you file . . . a 602 Appeal? . . .
>
> **PRESIDING COMMISSIONER TURNER**: Okay. Well, if that's the

---

[3] "An Olsen review is an administrative procedure which allows an inmate to review his central file." *Karas v. Marciano*, No. 16-cv-1960, 2017 WL 6816858, at *1 n.1 (C.D. Cal. Nov. 13, 2017), *report and recommendation adopted*, 2017 WL 6819460 (C.D. Cal. Dec. 29, 2017); *see also Gray v. Virga*, No. 2:12-cv-3006, 2015 WL 1509082, at *3 (E.D. Cal. Apr. 1, 2015).

4

> case, and that's how you're feeling, then what we're going to do is we're going to take recess, and we'll see if we can rectify any of those issues as it relates to you talking with your attorney without an officer standing there. I'm sure that that can be arranged if you think that's going to benefit you today?

*Id*. at 100-04. Despite this offer to address the issues, petitioner decided at the June 2015 Hearing to proceed without counsel, stating that he wished to represent himself:

> **INMATE ONTIVEROS**: I would like to ask that as we take this recess that I would like to represent myself, and that because of conflict of interest in that my attorney, you know, he's a nice gentleman, but he's just, I believe, you know, he's not representing my best interests.

*Id*. at 104. Even if petitioner had the constitutional right to communicate with his attorney in ways he proposed, he waived the right to counsel at the June 2015 Hearing. *See Ekdahl v. Ayers*, 621 F. Supp. 2d 829, 842 (N.D. Cal. 2008) (reasoning that prisoner had been afforded opportunity to be heard and informed of reasons underlying decision denying parole, as required to satisfy due process where prisoner waived his right to counsel).

At the December 2015 Hearing, petitioner had a new attorney. *See* ECF No. 6 at 112. By the December 2015 Hearing, remedies to resolve any issue pertaining to attorney-client confidentiality were available, as explained to petitioner during the June 2015 Hearing. *See id*. at 100-04. Petitioner does not allege that he ever asked to hand documents to the attorney who assisted him or that he asked to speak to the attorney in private. The Alameda County Superior Court concluded that petitioner had not exhausted his administrative remedies as to his confidential-communication claims, *see* ECF No. 6 at 70, and plaintiff does not dispute that finding. Petitioner states no claim for the deprivation of attorney-client confidentiality.

**b. Receipt of 2015 Report and rebuttal**

Petitioner contends that his due process rights were violated and—without explaining how the alleged violation occurred—cites the transcript from the June 2015 hearing. *See* ECF No. 6 at 9 (citing ECF No. 6 at 105-106). The cited portion of the transcript shows petitioner objecting to the use of the 2015 Report on the basis that petitioner had not received the report before the June 2015 Hearing. *See id*. at 105-106. Petitioner also contends that he had an opportunity to provide only a "very limited Rebuttal" of the 2015 Report. *See id*. at 9. However, the exhibits to the

5

complaint show that the hearing was postponed to December 2015 to allow petitioner to review the 2015 Report and conduct an Olsen review. ECF No. 6 at 94; *see also* ECF No. 13-1 at 69, 120-21; ECF No. 13-4 at 44.[4] By the December 2015 Hearing, petitioner had reviewed the 2015 Report, and he submitted documents to contest the 2015 Report's findings and gave an oral rebuttal. *See* ECF 6-1 at 66-72; ECF No. 13-4 at 76, 148-51, 155, 177-81, 181-95; ECF No. 13-5 at 8-14. Petitioner therefore cannot show a due process violation based on the lack of opportunity to review the 2015 Report. Although petitioner contends that his rebuttal was "very limited," suggesting that he had an inadequate opportunity for a rebuttal, ECF No. 6 at 9, he does not explain how his opportunity to rebut the 2015 Report was deficient when he was given the opportunities to submit documents to contest the report and to orally rebut it.

    **c. Olsen review**

Petitioner contends that "no Olsen Review had been conducted." *See* ECF No. 6 at 9. Petitioner does not now allege—and never informed the parole commissioners at either of the two hearings—that anyone deprived him of the *opportunity* to conduct an Olsen review. Indeed, the transcript of the December 2015 Hearing indicates that petitioner was given such an opportunity:

> **DEPUTY COMMISSIONER HOCKENHULL**: Okay. You've done your Olsen Reviews, when you were given the opportunity?
>
> **INMATE ONTIVEROS**: Yes, but now the new law is because there's no file. No hard evidence that I could look at to detect - - to determine whether the things are accurate or not.
>
> **DEPUTY COMMISSIONER HOCKENHULL**: Yes.
>
> **INMATE ONTIVEROS**: It's all on computer and trying to get your counselor to let you review what's in your file is nearly impossible because he's got the monitors facing him. So then when I went in there,

---

[4] Although petitioner has submitted the transcripts and other documents pertaining to the June 2015 Hearing and the December 2015 Hearing, some of those documents are missing several pages. Respondent has submitted the same documents in full, so we rely on Respondent's submissions for some parts of the analysis. *See generally* ECF No. 13-1 through 13-12. Those documents are subject to judicial notice because petitioner has submitted the same documents in state court when he pursued habeas relief in state court and petitioner relies on those documents in support of his claims. *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that court may take judicial notice of documents on file in federal or state courts or documents relied upon by complaint).

> I go, well, I need to do my Olsen Review. He says, well, what do you want to look at? And all of the monitors are facing him. There was no way. So I just said, you know what? I don't want any more trouble. I don't want to get another postponement. I just got postponed for them not giving me a copy of the psych report before this previous board hearing.

ECF No. 6 at 171-72. Petitioner appears to believe that he needed "hard evidence" against him to have a proper Olsen review, without identifying what constitutes such evidence. In any event, the absence of the kind of evidence that would satisfy petitioner does not mean that he was denied an administrative review of the documents in his inmate file. In addition, petitioner's statement above indicates that his inmate counselor offered him an opportunity to conduct an Olsen review, but petitioner declined that opportunity simply because computer monitors were facing the counselor at the time. What is more, petitioner had the assistance of counsel for the December 2015 Hearing. It is not plausible that petitioner's attorney could not have arranged an administrative review of documents for petitioner if petitioner had chosen to conduct such a review.

### d. Accommodations for disability

Petitioner claims that he was denied accommodations for an unidentified learning disability. *See* ECF No. 6 at 10. According to statements he made during the December 2015 Hearing, he was once diagnosed with a learning disability because of certain issues with comprehension and retention. ECF No. 13-4 at 67. An exhibit submitted by petitioner indicates that his learning disability causes difficulties in areas of "math and reading (poor retention and comprehension)." ECF No. 6-1 at 75; *see also* ECF No. 6-1 at 207-10. However, a psychologist who interviewed petitioner found no clinical test, school test result, or family history that supported the claimed disability; the psychologist wrote that he suspected "inconsistent effort" by petitioner. *See* ECF No. 6-1 at 209. A developmental disability screening administered by petitioner's prison showed normal cognitive functioning. *See id*. Indeed, petitioner has helped other inmates with legal briefs and appeals, researched legal issues, and written book reports. *See* ECF No. 6-1 at 111-159, 199, 209; ECF No. 13-4 at 175, 203; ECF No. 13-6 at 40, 69. At the December 2015 Hearing, petitioner did not deny that he had engaged in those activities. A psychologist has noted that petitioner can write well and that he is articulate. *See* ECF No. 6-1 at 209; ECF No. 13-6 at 40, 69.

7

1 Petitioner also reportedly filed a fraudulent tax return as a joke and forged a signature of his brother on a letter that ostensibly supported his release from prison. *See* ECF No. 6-1 at 209-10; ECF No. 13-1 at 112-13, 169; ECF No. 13-2 at 148-49; ECF No. 13-6 at 69. Those activities require a level of intelligence that tends to undermine petitioner's claimed learning disability. The transcripts from the hearings and petitioner's submissions indicate that petitioner understands pertinent legal concepts and that he is articulate. Further, even if petitioner had a learning disability, he had the assistance of counsel during his parole proceedings, and petitioner declined to have accommodations. *See* ECF No. 13-4 at 68 ("**INMATE ONTIVEROS**: No accommodations at this time, sir.").

### e. Bias

Petitioner contends that the commissioners at his parole hearings were biased. *See* ECF No. 6 at 13. The commissioners were biased, petitioner argues, because they used false evidence against him, namely that he shot his girlfriend and that he had disciplinary reports that "simply do not exist." *See id*. Petitioner is mistaken. It is true that the 2015 Report stated that petitioner was "involved in the shooting of a girlfriend" and that the investigation resulted in no charge against petitioner. *See* ECF No. 6-1 at 206; ECF No. 13-10 at 151. However, shooting of petitioner's girlfriend was not a factor relied upon by the presiding commissioner at the December 2015 Hearing; the commissioner instead noted other factors weighing against parole, including petitioner's view on the shooting of Moore, whom petitioner had shot for selling him a defective tape player, and his untruthfulness. *See* ECF No. 13-4 at 197-212. As for the disciplinary reports, petitioner admitted at the 2015 Hearing that he had 17 disciplinary infractions. ECF No. 13-4 at 125. Finally, an independent review of the hearings transcripts and other documents submitted by the parties does not show any bias by the commissioners.

In sum, petitioner has been afforded the minimal procedural safeguards required. Converting the petition into a Section 1983 complaint would be inappropriate. The court should dismiss the petition for lack of jurisdiction.

### III. Certificate of appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the court should decline to issue a certificate of appealability.

### IV. Other matters

Petitioner requests appointment of counsel and an evidentiary hearing. *See* ECF No. 6 at 11, 80. The petition presents no likelihood of success, so the interests of justice do not require appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B). After a review of the answer, the transcripts, and the rest of the record, we conclude that an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Cases, Rule 8(a). Petitioner's requests for appointment of counsel and an evidentiary hearing are denied.

### V. Findings and recommendations

The court should grant respondent's motion to dismiss, ECF No. 13, dismiss the case for lack of jurisdiction, and decline to issue a certificate of appealability.

These findings and recommendations are submitted to the U.S. District Court Judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, any party may file written objections to the findings

1 and recommendations with the court and serve a copy on all parties. That document must be
2 captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge
3 will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:  January 16, 2019                          /s/ Jeremy Peterson
                                                  UNITED STATES MAGISTRATE JUDGE